UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CRUNCHYROLL, INC., and TOKYO CORPORATION, by its attorney-in-fact, CRUNCHYROLL, INC.<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL PLEDGE, ARIA ADMIRAL, MOE AHMAD, WILLIAM BARRERA, and DOES 1-25,<br><br>Defendants. | Case No: C 11-2334 SBA<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**<br><br>Docket 79, 94, 103 |

Plaintiffs Crunchyroll, Inc. ("Crunchyroll") and TV TOKYO, Inc. ("TV Tokyo") bring the instant copyright infringement action against Defendants Daniel Pledge ("Pledge"), Aria Admiral, Moe Ahmad and William Barrera. Magistrate Judge Joseph Spero ("Magistrate"), the judge to whom the matter was originally assigned, issued a Report and Recommendation on Plaintiffs' Motion for Default Judgment in which he recommended granting Plaintiffs' request for injunctive relief but denying their request for actual damages in the sum of $4,087,950.65, or alternatively, $16,302,699.79. Dkt. 79, 94.

This matter is presently before the Court on Plaintiffs' Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge. Dkt. 103. In particular, Plaintiffs object to the Magistrate's recommendation to award no damages. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for de novo review, OVERRULES Plaintiffs' objections and ADOPTS the Magistrate's Report and Recommendation. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

The facts of this case are set forth in detail in the Magistrate's thorough Report and Recommendation. That factual recitation is incorporated by reference herein, and is summarized below only to the extent it is relevant to the instant motion.

## A. FACTUAL SUMMARY

TV Tokyo is a Japanese company that is the world's leading broadcaster and distributor of Anime (i.e., Japanese animated programs), including various copyrighted Anime series with titles such as Naruto, Naruto Shippuden and Bleach (collectively, "Anime Episodes"). Tokyo TV publicly broadcasts these programs on Japan television, in Japanese. Tokyo TV licenses its content to third parties for distribution over the internet based on a revenue sharing model under which Tokyo TV and the licensee share subscription and advertising revenue generated from the streaming of each Anime Episode.

Crunchyroll is a San Francisco-based company which operates the website www.crunchyroll.com. Pursuant to its licensing agreement with Tokyo TV, Crunchyroll has the exclusive right, for a period of seven days after the Anime Episodes are initially broadcast in Japan (i.e., "On Demand Window"), to stream the programs (which are translated into English) in certain parts of the world, including the United States. During the On Demand Window, Crunchyroll's paid subscribers have exclusive access to watch the Anime Episodes. After the On Demand Window ends, the Anime Episodes can be watched by paid subscribers (without advertisements)—or by non-subscribers on an ad-supported basis (i.e., with advertising). Plaintiffs assert that 34% of Crunchyroll's total views are subscriber views, while 66% are attributable to its free, ad-supported streaming. Crunchyroll thus earns revenue from Anime content from both viewer subscription fees and advertising revenue.

According to Plaintiffs, Defendants, without authorization, obtained 3,265 Anime Episodes from Crunchyroll's website or the Japanese television broadcast, uploaded the programs to YouTube and made them available to the public. Sec. Lin Decl. ¶ 49, Dkt. 87-4. At Crunchyroll's request, YouTube removed 1,175 of these videos. Id. ¶ 55. Google

data indicates that these videos were streamed (and potentially viewed) 193,020,557 times. Id. ¶ 56.  The remaining 2,090 videos were removed by Pledge.  Id. ¶ 49.  Plaintiffs have no data on the number of times those particular videos were viewed, but estimate (by extrapolating viewing data pertaining to the programs removed by YouTube) that they were streamed 277,809,070 times.  Id. ¶ 75.  Plaintiffs allege that users viewed the 3,265 Anime Episodes a total of 470,829,627 times.

### B. PROCEDURAL HISTORY

On March 11, 2011, Plaintiffs filed the instant action in this Court under the Copyright Act.  Dkt. 1.  None of the Defendants appeared and defaults were entered against them.  Dkt. 23, 29, 70.  The operative pleading is the Second Amended Complaint filed on April 12, 2013, which alleges a single claim for copyright infringement under the Copyright Act, 17 U.S.C. § 504.  Dkt. 62.

On July 11, 2013, Plaintiffs filed a Motion for Default in which they sought to enjoin Defendants from further unauthorized downloading of their anime programs and actual damages against Pledge in the sum of $24,795,373.88.  Dkt. 77, 79.  The Magistrate heard the motion on September 6, 2013.  At the hearing, the Magistrate directed Plaintiffs to file supplemental briefing on a number of issues, including the lack of evidence supporting their request for damages.  Dkt. 86, 94.

On December 13, 2013, Plaintiffs submitted their supplemental filings, which included a second supplemental declaration from James Lin, co-founder of Crunchyroll. Dkt. 87-89.  Apparently abandoning their original demand for $24,795,373.88 in damages, Plaintiffs now request $4,087,950.65 in damages, based on a "conservative" assumption that all of the Anime Episodes uploaded by Defendant Pledge on YouTube would have been watched in Crunchyroll's ad-supported environment.  Report and Recommendation at 24-26.  In the alternative, Plaintiffs seek $16,302,699.79 in damages, based on the supposed amount of Plaintiffs' total lost ad revenue *and* lost subscription revenue.  Id.

On February 10, 2014, the Magistrate issued his Report and Recommendation Re Motion for Default Judgment.[1]  The Magistrate recommended granting the motion as to Plaintiffs' request for injunctive relief, but denying it with respect to actual damages due to "insufficient evidence."  Id. at 24.  Plaintiffs now object to the Magistrate's recommendation regarding the denial of damages, and have filed a Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge.  In particular, Plaintiffs contend that the Magistrate's recommendation was erroneous and that there is both a legal and factual basis for awarding $4,087,950.65 or $16,302,699.79 in damages against Pledge.

## II.    LEGAL STANDARD

"Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); see 28 U.S.C. § 636(b)(1); Civ. L.R. 72-2, 72-3.  In the absence of a timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72, advisory committee notes (1983) (citing Campbell v. U.S. Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974)); see also United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if [an] objection is made*, but not otherwise.").  The district court must review de novo "those portions of the report to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); see Civ. L.R. 72-3(a) (requiring that any objection be accompanied by a motion for de novo determination).

---

[1] Because of limitations on a magistrate judge's authority to grant injunctive relief, see 28 U.S.C. § 636(b)(1)(A), the Magistrate styled his ruling on the motion as a report and recommendation, and directed the reassignment of the action to a district court judge.

### III. DISCUSSION

Generally, a copyright owner is entitled to the remedies of injunctive relief, monetary damages, attorney's fees, and costs when a copyright is infringed. 17 U.S.C. §§ 502, 504, 505. Pursuant to § 504(b), "Congress explicitly provides for two distinct monetary remedies—actual damages and recovery of wrongful profits. These remedies are two sides of the damages coin—the copyright holder's losses and the infringer's gains." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 707-708 (9th Cir. 2004). Actual damages for copyright infringement "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (internal quotations omitted, emphasis added). The actual damages being sought "must be suffered 'as a result of the infringement,' and recoverable profits must be 'attributable to the infringement.'" Id. at 708. The requisite causal connection is "akin to tort principles of causation and damages" between the infringement and the requested damages. Id.[2]

Plaintiffs do not contend that Pledge profited from his infringement. Rather, Plaintiffs seek actual damages based on their *own* lost profits—based on the amount of licensing revenue they allegedly would have received had *all* of the YouTube viewers of the Anime Episodes watched them on Crunchyroll's website. As noted, Tokyo TV only licenses its content based on a revenue sharing model (as opposed to a fixed licensing fee) in which it shares in any subscription and advertising revenue generated by the licensee. Thus, Plaintiffs theorize that if all of those persons watching the Anime Episodes on YouTube would have watched them instead on Crunchyroll's site, Crunchyroll would have generated revenue through advertising and/or subscription fees which would have then been shared with Tokyo TV.

---

[2] When proof of actual damages or infringer's profits is insufficient, a copyright owner may elect to receive statutory damages, subject to having met other statutory requirements. See 17 U.S.C. §§ 412(2), 504(c). Plaintiffs, however, seek only actual damages.

Plaintiffs posit two damages theories.  First, Plaintiffs contend that they lost $4,087,950.65 in advertising revenue based on the assumption that all of the persons who viewed the Anime Episodes uploaded by Pledge to YouTube would have viewed those episodes on Crunchyroll's ad-supported site.  Sec. Lin Decl. ¶ 45 & Ex. E.  The Court finds, as did the Magistrate, that this claim is unsupported.  See Report and Recommendation at 25.  Plaintiffs offer no evidence that all of Pledge's YouTube viewers necessarily would have watched the Anime Episodes on Crunchyroll's ad supported site.  As Plaintiffs themselves note, viewers may prefer to watch an episode on YouTube in order to avoid having to be subjected to advertising.  Sec. Lin Decl. ¶¶ 18, 24.  As such, it is entirely speculative to assume that all YouTube viewers would automatically watch the Anime Episodes using Crunchyroll's ad-supported site in lieu of their availability on YouTube.  Moreover, Plaintiffs offer no evidence that the viewership on Crunchyroll's ad-supported site declined during the time-period that the Anime Episodes were available on YouTube.  See Oracle USA, Inc. v. SAP AG, No. C 07-1658 PJH, 2011 WL 3862074, at *9 (N.D. Cal. Sept. 1, 2011) ("no court has awarded a lost license fee in the absence of evidence that the copyright holder actually lost license fees.").

Plaintiffs contend that the Magistrate "ignored" evidence that people who watch Anime Episodes are "committed viewers," whose dedication is shown by conversations in various chat rooms and blog posts.  Mot. at 7-9.  There is no indication that the Magistrate ignored anything.  While the handful of anecdotal internet conversations and posts cited by Plaintiffs may suggest that the Anime Episodes have a "committed" fan base, it does not logically follow that all of the alleged 470,829,627 views on YouTube would have taken place on Crunchyroll's ad-supported site if they programs were unavailable on YouTube.  Plaintiffs' damage claim is therefore untenable, as it is based on nothing more than sheer speculation.  See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985) ("In a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative.").

1    The Court also is unpersuaded by Plaintiffs' ancillary contention that the Magistrate
2 erred in citing their failure to "submit evidence of decreased viewing" on Crunchyroll's
3 site, claiming, without citation to any relevant legal authority, that "this is not the legal
4 standard in copyright damage cases." Mot. at 11. The law of this Circuit requires that
5 Plaintiff demonstrate a nexus between the claimed damages and the infringing conduct.
6 See Polar Bear Prods., Inc., 384 F.3d at 708 ("Under § 504(b), actual damages *must* be
7 suffered '*as a result of* the infringement,' and recoverable profits must be '*attributable* to
8 the infringement.'") (emphasis added). Evidence that Crunchyroll's viewership declined
9 during the period of infringement arguably would have supported the inference that
10 Pledge's YouTube viewers would have watched the programs on Crunchyroll's site if those
11 programs were not posted on YouTube. Consequently, the fact that Plaintiffs made no such
12 showing undermines any claim that Pledge's infringing conduct proximately caused any
13 injury to Plaintiffs. See Polar Bear Prods., 384 F.3d at 708.
14    Citing Millennium TGA, Inc. v. Leon, No. 12-CV-01360, 2013 WL 5719079
15 (E.D.N.Y. Oct. 18, 2013), Plaintiffs contend that they need only proffer the number of
16 times the unauthorized content was publicly accessed as a basis for estimating damages for
17 copyright infringement. Mot. at 12-13. In that case, the defendant downloaded the
18 plaintiff's subscription-based adult content and reposted it, inter alia, to his own blog. The
19 district court granted plaintiff's request for default judgment and awarded $20,100 in
20 damages, including $18,300 in lost subscription fees. In support of its request, Plaintiff
21 argued that its actual damages should be calculated based on 500 views, which it premised
22 on evidence that the defendant's blog was accessed *324,741 times* during a 16-month
23 period. In addition, the plaintiff presented evidence that its revenues increased by 11%
24 during the three months following the shutdown of the defendant's blog. Id. at *10.
25    Millenium is distinguishable. Plaintiffs do not predicate their damages claim on a
26 fraction of all views. To the contrary, Plaintiffs assume that *all* of alleged 470,829,627
27 views of the Anime Episodes on YouTube would have been made on Crunchyroll's site. In
28 addition, and important here, Plaintiffs have made no showing that Crunchyroll's

1  viewership was adversely affected during the time period that the YouTube videos were
2  available. The plaintiff in <u>Millenium</u> presented evidence that *after* defendant's blog was
3  removed, plaintiff's revenues *increased* by 11%. A logical inference from such evidence is
4  that defendant's infringing conduct did, in fact, negatively affect plaintiff's sales. Notably,
5  Plaintiffs, who were notified of the evidentiary deficiencies by the Magistrate, offer no
6  analogous evidence in this case. In view of these critical distinctions, the Court finds
7  <u>Millenium</u> inapposite.
8      Lastly, the Court finds no error in the Magistrate's rejection of Plaintiffs' alternative
9  demand for $16,302,699.79 in damages. As noted, this particular figure is based on a
10 combined loss of advertising revenue and subscription revenue. Sec. Lin Decl. ¶¶ 45, 46 &
11 Ex. F. The Magistrate found that Plaintiffs had presented no evidence to support their
12 central premise that 34% of Pledge's YouTube viewers would have been willing to pay a
13 subscription fee to watch the programs on Crunchyroll's site. <u>See</u> Report and
14 Recommendation at 25-26. In their motion, Plaintiffs simply reassert their arguments
15 pertaining to their "conservative" damage claim of $4,087,950.65. Mot. at 14-15.
16 Therefore, for reasons discussed above, the Court finds, upon de novo review, that
17 Plaintiffs have failed to carry their burden of demonstrating their entitlement to actual
18 damages under the Copyright Act.

### IV.  CONCLUSION

20     The Court finds no merit to Plaintiffs' objections to the Magistrate's Report and
21 Recommendation, and concludes that his recommendation to award no actual damages
22 under the Copyright Act is correct. As for the Magistrate's recommendation to grant
23 Plaintiffs' request for injunctive relief, the Court finds no clear error on the face of the
24 record and accepts that recommendation. Accordingly,
25     IT IS HEREBY ORDERED THAT Plaintiffs' motion for de novo review is
26 GRANTED. Plaintiffs' objections are OVERRULED. The Court ADOPTS the
27 Magistrate's Report and Recommendation which shall become the Order of the Court. The
28 Clerk shall enter judgment, close the file and terminate all pending matters and deadlines.

IT IS SO ORDERED.

Dated: March 31, 2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge